OPINION OF THE COURT
Carol H. Arber, J.
Petitioner, an administrator, moves to dismiss the counterclaims asserted by the respondent on the grounds that a counterclaim by a tenant on a breach of the warranty of habitability cannot be asserted as a matter of law against an article 7-A administrator.
The court respectfully disagrees and finds that said counterclaim does state a cause of action and the motion to dismiss based on CPLR 3211 (subd [a], par 7) is denied.
In 1975 the Legislature amended the Real Property Law to include section 235-b (eff Aug. 1, 1975) which provides: “1. In every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the premises so leased or rented and all areas used in connection therewith in common with other tenants or residents are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety. When any such condition has been caused by the misconduct of the tenant or lessee or persons under his direction or control, it shall not constitute a breach of such covenants and warranties.”
*128 Not only did the Legislature add this section, but it further provided in subdivision 2 of section 235-b that it was contrary to public policy for a tenant to waive such rights away.
Section 235-b codified the gradual change in the landlord-tenant relationship that had been increasingly recognized by the courts. Before 1975, tenants were obligated to pay the rent without regard to the conditions in which they were living and merely based on the relationship of landlord-tenant. The courts had begun to re-examine that policy in a number of cases and had begun to recognize an implied warranty of habitability in residential cases. (Amanuensis, Ltd. v Brown, 65 Misc 2d 15; Tonetti v Penati, 48 AD2d 25.) Section 235-b transformed that implied warranty into a codified one, thereby changing the landlord-tenant relationship into one of contracting parties in which the obligation of the tenant to pay rent is dependent on the provision by the landlord of habitable premises in which to live. The obligation and scope of the warranty has been interpreted to require the landlord to provide premises that are fit for occupancy by tenants not only at the inception of the tenancy but throughout the term. (2 Rasch, NY Landlord & Tenant, Summary Proceedings [2d ed], 1984 Cumulative Supplement, § 561.5.)
Where the premises are not fit the tenant may institute an action or may defend in a proceeding for nonpayment based on breach of warranty. In order to ensure that the burden of proving damages would not become an obstacle to tenants, subdivision 3 of section 235-b provides that the court may determine the amount of damages where a breach is claimed without requiring expert testimony.
Section 235-b provides tenants with a great number of protections that were previously uncodified. In keeping with the purpose of section 235-b the cases interpreting it have broadened rather than narrowed its application in a number of situations in which questions have arisen:
(1) The warranty is not waivable. (Houston Realty Corp. v Castro, 94 Misc 2d 115.)
(2) Section 235-b applies to leases executed prior to its enactment. (Park West Mgt. Corp. v Mitchell, 62 AD2d 291, affd 47 NY2d 316.)
*129 (3) A clause in a lease which bars counterclaims does not apply to a counterclaim for breach of the warranty of habitability.
(4) The warranty is applicable to cooperative apartments where the landlord is not a profit-making organization. (Hauptman v 222 East 80th St. Corp., 100 Misc 2d 153.)
(5) The warranty of habitability applies to city-owned buildings, rejecting the argument that the city is not in the business of making a profit. (City of New York v Rodriguez, 117 Misc 2d 986 [App Term, 1st Dept].)
From this brief perusal of the cases it is clear that the courts have found that section 235-b was intended by the Legislature to protect all residential tenants in New York.
In the instant case petitioner argues that such a counterclaim cannot be asserted against him because of his status as an article 7-A administrator. Petitioner was appointed to the position by Judge Harriet George in an order dated May 26, 1983, in which the administrator is authorized, among other things, “to grant abatements of rent with all tenants and occupants on such terms that are just, proper, equitable and reasonable under the circumstances.”
The language in the order appointing petitioner gives him the authority to decide to abate rent on his own. It is therefore difficult to understand his argument that the tenant cannot assert a counterclaim for something that is clearly within his authority to grant.
In his papers, petitioner relies on Salzman v Brown (67 Misc 2d 101) as a basis for claiming that the counterclaim .here does not lie. The Salzman case however does not apply to this proceeding as it involves a situation where the Department of Social Services as amicus curiae asserted a counterclaim based on the Speigel Law (L 1962, ch 997 [which is aimed at permitting welfare to intervene where recipients are being exploited by landlords]) and the court found that welfare could not assert a counterclaim against an article 7-A administrator. As the tenant here is not on welfare and the Department of Social Services is not involved in this case, the holding in Salzman does not apply.
While petitioner also asserts that he is not running this building for gain, the Appellate Term dispensed with that argument in City of New York v Rodriguez (supra). At the *130 trial of this nonpayment proceeding, the trial court shall be in a position to assess the validity of the counterclaims. If they are determined to be valid, the court may assess the damages based not only on the condition of the apartment, but on the over-all condition of the building. Since this is a 7-A building, it may well be that the measure of damages would differ from another building which is not subject to 7-A. However, the counterclaims shall remain to be heard and determined at trial. Motion to dismiss counterclaims denied.