[48 NYS3d 304]

THE HEYWOOD CONDOMINIUM, by its Board of Managers, Respondent, v STEVEN WOZENCRAFT, Appellant, et al., Defendants.

First Department, January 12, 2017

### APPEARANCES OF COUNSEL

*Jonathan M. Landsman*, New York City, for appellant.

*Schwartz Sladkus Reich Greenberg Atlas LLP*, New York City (*Mitchell Flachner* and *Steven D. Sladkus* of counsel), for respondent.

### OPINION OF THE COURT

Tom, J.P.

In these appeals we must consider a rare occurrence—the eviction of a condominium unit owner from his apartment for failure to pay condominium common charges and rent. Indeed, unlike co-op boards, which are "well equipped with legal remedies to address the issue of chronic misconduct by tenant-shareholders" (Bruce A. Cholst & Mary L. Kosmark, Outside Counsel, *Overcoming Limitations of Condo Boards in Dealing with Unruly Residents*, NYLJ, Mar. 13, 2012 at 4, col 1), condo boards are far less empowered to deal with difficult condominium owners (*see generally* Michael R. Fierro, *Condominium Association Remedies Against a Recalcitrant Unit Owner*, 73 St John's L Rev 247 [1999]). However, the Condominium Act and the applicable bylaws for the subject condominium authorize a lien for unpaid common charges and

permit a lien foreclosure action and an action for the appointment of a receiver where appropriate (*see* Real Property Law §§ 339-z, 339-aa). Further, the order appointing the receiver in this matter authorized the receiver to take certain actions, including ejectment of defendant from the property (*see Fourth Fed. Sav. Bank v 32-22 Owners Corp.*, 236 AD2d 300, 301 [1st Dept 1997]). Accordingly, we hold that pursuant to the Condominium Act and relevant condominium bylaws, and under the circumstances presented here, eviction was proper and not unconstitutional.

In May 2006, defendant Steven Wozencraft purchased an apartment in The Heywood, a condominium located at 263 Ninth Avenue in Manhattan. According to article 5 of the condo's bylaws, each unit owner is responsible for the payment of monthly common charges and assessments. Notably, under the bylaws, dissatisfaction with the quantity or quality of maintenance or services is not a ground for withholding or failing to pay common charges.

The bylaws provide that failure to timely pay common charges and assessments places the unit owner in default of the bylaws and triggers the imposition of late charges. Further, if the common charge or assessment is not paid within 30 days after the due date, such common charge or assessment will bear interest and the Board of Managers may bring legal action against the unit owner.

In addition, section 5.5 (c) of the bylaws states, in pertinent part: "The expenses, including without limitation, attorneys' fees and disbursements, incurred by the Board in any proceeding brought to collect such unpaid Common Charges or assessments, shall be added to the amount of such delinquent Common Charge, assessment or installment thereof, together with late charges and interest."

Section 5.7 of the bylaws also states, in pertinent part:

> "All sums assessed as Common Charges by the Board of Managers, as well as any other assessments made by the Board of Managers, but unpaid, together with late charges as may be established by the Board of Managers, interest thereon . . . and reasonable attorneys' fees and other costs and expenses incurred in efforts to collect such past due Common Charges and/or other assessments, shall be the personal obligation of the Unit Owner. Such sums shall constitute a lien upon the Unit."

Section 5.8 of the bylaws permits the Board of Managers to foreclose on any lien for past due common charges and assessments, and section 5.9 (a) provides:

> "In any action brought by the Board of Managers to foreclose a lien on a Unit because of unpaid Common Charges or other assessments, the Unit Owner shall be required to pay a reasonable rental for the use of said Unit Owner's Unit and the plaintiff in such foreclosure action shall be entitled to the appointment of a receiver to collect the same."

In April 2007, less than one year after defendant purchased his unit, he ceased paying his common charges and assessments. Defendant claimed he was denied various nonessential services such as doorman services, service calls to his unit, and receipt of packages and deliveries. Defendant asserts that efforts to resolve the dispute were persistently rebuffed by plaintiff. In any event, as a result of defendant's failure to pay common charges, plaintiff exercised its right to curtail certain nonessential services to defendant pursuant to rule 32 of the condo's house rules, which permits the cessation of such services to unit owners who are more than 60 days in arrears in the payment of common charges. Additionally, pursuant to section 5.5 (c) of the bylaws, plaintiff began assessing late charges, interest and attorneys' fees incurred in its efforts to collect the unpaid charges from defendant.

Thereafter, in 2011, plaintiff commenced a plenary action for unpaid common charges seeking only a money judgment in the amount of $96,021.30, and the appointment of a receiver to collect "reasonable rent" from defendant. Defendant answered, asserting numerous affirmative defenses and counterclaims, alleging that plaintiff breached its obligations to him in failing to provide proper services to him. In October 2011, plaintiff entered into a "so ordered" stipulation in which it withdrew, with prejudice, as to that 2011 action only, its causes of action for rent allegedly due and its request for the appointment of a receiver.

In March 2012, plaintiff moved for summary judgment in its favor for unpaid common charges, an order dismissing defendant's affirmative defenses and counterclaims, an order appointing a receiver, and an award of attorneys' fees. Then, in July 2012, prior to a ruling on its summary judgment motion, plaintiff again moved for an order appointing a receiver for the unit.

In September 2012, the court denied plaintiff's motions for summary judgment on its claims for common charges, appointment of a receiver, and for attorneys' fees, and denied defendant's cross motion for partial summary judgment.

Then, on February 21, 2013, plaintiff recorded a lien in the Office of the City Register against the unit for unpaid common charges in the amount of $211,178.40, of which $69,470.51 constituted late fees and $63,408.59 legal fees. In March 2013, while the 2011 action was still pending, plaintiff filed a notice of pendency and commenced this foreclosure action, asserting three causes of action: (1) judgment of foreclosure; (2) money damages in the amount of $215,318.13; and (3) attorneys' fees. Simultaneously, plaintiff moved for the appointment of a temporary receiver, pursuant to Real Property Law § 339-aa.

Defendant cross-moved to dismiss the action on the grounds that: (a) service of process was defective; (b) a prior action was pending between the parties; (c) plaintiff waived the right to foreclose its lien by failing to assert the claim in the prior foreclosure action and/or res judicata; (d) documentary evidence bars this action, as the action seeks to foreclose on a fraudulently inflated lien; and (e) the complaint fails to state a legally cognizable cause of action.

As to the first ground, defendant argued that service of process was defective, because the affidavit of service was never filed in the County Clerk's office within 20 days of mailing; the process server failed to use the required due diligence, pursuant to CPLR 308 (4), since he only made three attempts to serve him, all of which occurred during business hours on weekdays at his residence; and the summons and complaint were not affixed to his apartment door, but had been slipped under the door and discovered there by his personal assistant.

By order entered September 20, 2013, the court referred the matter to a special referee to conduct a traverse hearing to determine whether defendant had been properly served with process and whether the appointment of a receiver should be ordered. Plaintiff's motion and defendant's cross motion were held in abeyance pending receipt of the referee's report.

On December 17, 2013, a traverse hearing was held before Judicial Hearing Officer (JHO) Ira Gammerman. At the conclusion of the hearing, the JHO determined that defendant had been properly served with the summons and complaint, and recommended the appointment of a temporary receiver to collect rent, unless defendant paid all common charges and as-

sessments going forward, and placed in escrow all past common charges and assessments.

Plaintiff moved to confirm the JHO's report, arguing that the report's findings are supported by the record. Defendant cross-moved to reject the report, reiterating arguments he had raised on his cross motion to dismiss, and arguing that certain comments by the JHO constituted "procedural irregularities" warranting rejection of the report.

By order entered November 17, 2014, Supreme Court granted plaintiff's motion to confirm the JHO's report, and denied defendant's cross motion to reject it. The court found that the JHO "repeatedly defined the issues," and made pronouncements as to which evidence he found credible and persuasive. The court also found that while, "in an effort to reach substantive issues, the JHO may have been flippant with some of his remarks, including his comment about the process server having an 'honest face,' " such comments did not mandate rejection of the report, especially since defense counsel offered no objection to the evidence itself.

As to the appointment of a receiver for the unit, the court found that defendant offered no evidence to refute plaintiff's assertion that he had made no payments towards the unit's common charges from April 2007 to the present. Thus, the court found that the record, taken as a whole, supported the JHO's findings of fact.

By order entered January 28, 2015, the court granted plaintiff's motion for the appointment of a temporary receiver, denied defendant's cross motion to dismiss, and deemed defendant properly served with the summons and complaint. The court appointed Allison M. Furman as temporary receiver for the unit, with the authority and directive to rent the unit, and, inter alia, directed defendant, who still occupied the unit, to pay to the receiver "the reasonable fair market rent of $6,500" per month for his use and occupancy. The order explicitly granted the receiver authorization to institute any necessary legal proceedings for the protection of the unit, including instituting proceedings to remove any tenant, including defendant.

Approximately six months later, the receiver moved, pursuant to RPAPL 221, for a writ of assistance ejecting defendant from the unit as a result of his failure to comply with the prior order directing him to pay $6,500 per month for his use and occupancy of the unit. By order entered September 9, 2015, the

court granted the receiver's motion for an order ejecting defendant from the unit, with a 20-day stay of execution. On December 22, 2015, this Court granted a stay of the September 9, 2015 order pending determination of the appeal.

Initially, we find there are no grounds to overturn the JHO's conclusion that defendant was properly served with the summons and complaint in this action. The JHO's finding, after a traverse hearing, that defendant had been properly served with process is supported by the record and was properly confirmed by the court (*see Bubul v Port Parties, Ltd.*, 83 AD3d 517 [1st Dept 2011]).

 In particular, the process server testified that he had made three attempts at serving defendant at his home with the summons, complaint, and notice of pendency before resorting to "nail and mail" service. After the last attempt, he affixed the summons and complaint to the door and was escorted out of the building by the building's superintendent. He then completed service by mailing the papers on April 4, 2013 by first class mail. This testimony was corroborated by the server's logbook and the testimony of the superintendent, who stated that on April 1, 2013 he escorted the process server, witnessed him knock on the door, wait for a response, and then affix the summons, complaint, and notice of pendency to the door, at about eye level with what looked like tape. We reject defendant's challenges to the process server's credibility, since the JHO was "in the best position to weigh the evidence and make credibility determinations" and such determinations are accorded deference by the motion court (*Winopa Intl., Ltd. v Woori Am. Bank*, 59 AD3d 203, 204 [1st Dept 2009] [internal quotation marks omitted]).

The JHO was free to discredit the testimony of defendant's assistant, who claimed there were no papers taped to the door and that the papers were shoved under the apartment door when he returned to the apartment between 3:00 p.m. and 4:00 p.m. on April 1, 2013. Notably, the assistant also testified that he arrived at the apartment on the same day as the Jeffrey Cares Fashion event, and the record establishes that that particular event was held the following day, April 2, 2013, the day after the process server had affixed the papers to defendant's door.

We find no merit to defendant's remaining contentions regarding the JHO's ruling, including his complaints about certain comments made by the JHO.

■ Turning to defendant's arguments in favor of dismissing the causes of action in the complaint, we find no basis to dismiss the first cause of action for lien foreclosure. In particular, we reject defendant's contentions that plaintiff's lien on the unit is fraudulent to the extent it includes attorneys' fees, late fees, and interest. Real Property Law § 339-z provides, "The board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof, together with interest thereon." Moreover, section 5.5 (c) of the condominium bylaws authorizes plaintiff to add attorneys' fees, late fees, and interest to the amount of the delinquent common charges, and section 5.7 of the bylaws states that all such fees will constitute a lien on the unit (*see Frisch v Bellmarc Mgt.*, 190 AD2d 383, 386 [1st Dept 1993]; *see also In re Forde*, 507 BR 509 [SD NY 2014]).

Defendant's challenges to the amounts due should be addressed by a referee, pursuant to RPAPL 1321 (*see Board of Mgrs. of Cent. Park Place Condominium v Potoschnig*, 111 AD3d 586 [1st Dept 2013]; *1855 E. Tremont Corp. v Collado Holdings LLC*, 102 AD3d 567, 568 [1st Dept 2013]). We relatedly find that Supreme Court properly denied defendant's motion to dismiss plaintiff's third cause of action, for attorneys' fees, because sections 5.5 (c) (iii) and 5.7 of the bylaws allow plaintiff to recover from defendant "reasonable attorneys' fees" incurred in efforts to collect past due common charges and assessments. The referee should also determine the amount of plaintiff's reasonable attorneys' fees (*see* CPLR 4311; *Potoschnig*, 111 AD3d at 586).

However, we dismiss the second cause of action for money damages. While section 5.9 (c) of the bylaws and Real Property Law § 339-aa permit plaintiff to proceed with both the 2011 action to recover a money judgment and the instant foreclosure action, plaintiff may not seek a money judgment in this foreclosure action while also seeking a money judgment in the pending 2011 action. Accordingly, dismissal of the second cause of action, seeking a money judgment, is warranted (*see* CPLR 3211 [a] [4]).

■ Defendant's challenges to the appointment of a receiver are unavailing, since both Real Property Law § 339-aa and section 5.9 of the bylaws provide for the appointment of a receiver in a lien foreclosure action to collect the reasonable rent. Specifically, Real Property Law § 339-aa provides, in relevant part, that the plaintiff in a foreclosure action "shall be entitled

to the appointment of a receiver" to collect the reasonable rent for the unit. Similarly, section 5.9 (a) of the bylaws provides that "the plaintiff in [a] foreclosure action shall be entitled to the appointment of a receiver."

Defendant's reliance on cases where this Court has held that there was no showing that a receiver was necessary is misplaced. Those cases are factually distinguishable, as they did not involve condominium bylaws authorizing the appointment of a receiver (*see e.g. Matter of Armienti & Brooks*, 309 AD2d 659 [1st Dept 2003]). Defendant claims that although the JHO's recommendation to appoint a receiver was contingent upon his posting the alleged common charge arrears in escrow and his payment of prospective common charges, he was never actually given the chance after confirmation of the report to comply with the JHO's conditions. However, there is no evidence that defendant ever attempted to place the common charge arrears in escrow, despite having more than 18 months to do so following confirmation of the report.

Contrary to defendant's contention that he cannot be directed to pay rent for the unit he owns, Real Property Law § 339-aa provides, in relevant part, that in a foreclosure action, "the unit owner shall be required to pay *a reasonable rental for the unit* for any period prior to sale pursuant to judgment of foreclosure and sale" (emphasis added). Further, the court properly accepted the affidavit of plaintiff's property manager in setting defendant's monthly use and occupancy of the unit at $6,500. The property manager's statement that $6,500 was the "reasonable rental" amount for plaintiff's unit was based on comparable rentals in the condominium, and defendant provided no evidence to refute this showing (*see Rose Assoc. v Johnson*, 247 AD2d 222, 223 [1st Dept 1998]).

■ The receiver's mistaken reliance on RPAPL 221 in connection with the writ of assistance was a technical defect that should be disregarded. RPAPL 221 permits the enforcement of a properly rendered order or judgment "affecting the title to, or the possession, enjoyment or use of, real property" (*see Hudson Riv. Park Trust v Basketball City USA, LLC*, 22 AD3d 422, 423 [1st Dept 2005], *lv denied* 6 NY3d 715 [2006]). Thus, the receiver here could not obtain possession of the unit pursuant to RPAPL 221 in the absence of a judgment directing the delivery of the property. However, there is no merit to defendant's contention that this defect requires reversal of the order granting the writ of assistance, since he was not prejudiced by

this defect (*see Farkas v Tarrytown Lbr.*, 133 AD2d 251, 253 [2d Dept 1987]). Indeed, the receiver was properly granted a writ of assistance ejecting defendant from the unit, since the order of appointment authorized the receiver to take certain actions, including ejectment of defendant from the property (*see Fourth Fed. Sav. Bank v 32-22 Owners Corp.*, 236 AD2d at 301).

Although defendant claims that the receiver could not move for a writ of assistance without instituting a summary proceeding, in *Fourth Federal* we rejected this very argument, finding that the fact that the receiver's motion had been made in the context of a foreclosure action and denominated a motion for a writ of assistance, rather than in the form of a summary proceeding, was "irrevelant" (236 AD2d at 303).

Nor is there merit to defendant's additional attacks on the writ of assistance. The record establishes that the receiver's oath, pursuant to CPLR 6402, in which she faithfully and fairly discharged the trust committed to her, was actually filed at the time of the bond. In any event, the filing of an oath "is a ministerial act and, if omitted, it may be done nunc pro tunc" (*NYCTL 2011-A Trust v Da'Jue Props. Inc.*, 132 AD3d 569, 570 [1st Dept 2015], *lv dismissed* 27 NY3d 1029 [2016]). Further, any delay in the receiver filing her bond was unintentional. The receivership order required the receiver to maintain an account with JP Morgan Chase. However, that bank no longer allows receivership accounts and defendant refused to consent to an amendment of the receivership order solely to change the required bank from Chase to Signature Bank. As a result, the receiver had to file an order to show cause to seek an amendment of the receivership order to change banks, which was the cause of the delay.

Ejectment of defendant from the unit was not unconstitutional, since he failed to comply with the court's prior order directing him to pay the "reasonable fair market rent" of $6,500 per month for his use and occupancy of the unit. Contrary to defendant's contentions, he was properly required to pay rent on the unit, regardless of the fact that he was the unit's owner, since both Real Property Law § 339-aa and section 5.9 of the bylaws provide that in a lien foreclosure action, "the Unit Owner shall be required to pay a reasonable rental for the use of said Unit Owner's Unit." It is inconsequential and irrevelant to this action that defendant defeated plaintiff's motion for summary judgment in the 2011 action. Nor does ejectment

under these circumstances deprive defendant of his "real property ownership/occupancy rights without due process of law."

Accordingly, the order of the Supreme Court, New York County (Donna M. Mills, J.), entered on or about November 17, 2014, which granted plaintiff's motion to confirm the January 14, 2014 report of the Judicial Hearing Officer, determining, after a traverse hearing, that process had been properly served, and recommending the appointment of a temporary receiver, and denied defendant's cross motion to reject the report, should be affirmed, without costs. The order of the same court and Justice, entered on or about January 28, 2015, which, inter alia, granted plaintiff's prior motion for the appointment of a receiver and directed defendant to pay monthly rent of $6,500 to the receiver for his use and occupancy of the condominium unit, and denied defendant's cross motion to dismiss the complaint should be modified, on the law, to dismiss the second cause of action, for money damages, and otherwise affirmed, without costs. The order of the same court and Justice, entered September 9, 2015, which granted the court-appointed receiver's motion for a writ of assistance ejecting defendant from his condominium unit, should be affirmed, without costs.

SWEENY, RICHTER, MANZANET-DANIELS and WEBBER, JJ., concur.

Order, Supreme Court, New York County, entered on or about November 17, 2014, affirmed, without costs. Order, same court and Justice, entered on or about January 28, 2015, modified, on the law, to dismiss the second cause of action, for money damages, and otherwise affirmed, without costs. Order, same court and Justice, entered September 9, 2015, affirmed, without costs.

Motion to take judicial notice denied.